**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| FRANTZ CADET, JR.,<br>*Plaintiff*,<br><br>v.<br><br>LILY CADET,<br>*Defendant*. | No. 3:26-cv-00310 (VAB) |

## RULING AND ORDER ON MOTION TO DISMISS

Mr. Frantz Cadet (the "Plaintiff") sued Ms. Lily Cadet (the "Defendant") for defamation of character - slander ("Count One"), defamation of character – libel ("Count Two"), false light ("Count Three"), intentional infliction of emotional distress ("Count Four"), negligent infliction of emotional distress ("Count Five"), and abuse of process ("Count Six"). Compl., ECF No. 1 (Mar. 2, 2026) ("Compl.").

Ms. Cadet has filed a motion to dismiss the Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Mot. to Dismiss, ECF No. 14 (Apr. 27, 2026).

For the following reasons, the motion to dismiss is **GRANTED**.

To the extent the deficiencies identified in this Ruling and Order can be remedied, any proposed Amended Complaint shall be filed by **December 18, 2026**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Mr. Cadet alleges that he was falsely accused of sexual assault of a minor, Ms. Cadet, by the State of Connecticut based on a report made by Ms. Cadet. Compl. ¶ 5. He alleges that "[t]he accusations and statements by the defendant were made verbally and in writing about and

concerning the Plaintiff, Cadet to various police departments and other state agencies on or about March 18, 2023 and later and continuing in the future as the criminal case progresses." *Id.* ¶ 7.

According to Mr. Cadet, Ms. Cadet knew that many of the statements were false and those false statements led to his arrest. *Id.* ¶¶ 8-9. Mr. Cadet also alleges that the allegedly false statements have harmed his personal and professional reputation and have caused him to incur "money damages, anguish and emotional distress, and extreme emotional distress." *Id.* ¶ 11.

### B. Procedural History

On March 2, 2026, Mr. Frantz Cadet initiated the action by filing this lawsuit against Ms. Lily Cadet. ECF No. 1 (Mar. 2, 2026).

On April 27, 2026, Ms. Cadet filed a motion to dismiss the Complaint for lack of jurisdiction. Mot. to Dismiss, ECF No. 14 (Apr. 27, 2026) ("Mot.").

On June 8, 2026, Mr. Cadet filed his response to the motion to dismiss. Resp. to Mot. to Dismiss, ECF No. 21 (Jun. 8, 2026) ("Resp. to Mot. to Dismiss").

On June 19, 2026, Ms. Cadet filed a reply to the response. Rep. to Resp. to Mot. to Dismiss, ECF No. 22 (Jun. 19, 2026) (Rep. to Resp. to Mot. to Dismiss").

## II. STANDARD OF REVIEW

### A. 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The plaintiff therefore must make a prima facie showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* (internal quotation marks omitted); *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). A court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

**B. 12(b)(6)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

Ms. Cadet moves to dismiss Mr. Cadet's Complaint for lack of personal jurisdiction and for the failure of the claims on their merits. As to the jurisdictional issue, she argues that

"Connecticut's long-arm statute does not reach Defendant, and there is no statutory basis for this Court's jurisdiction over Defendant." Mem. in Supp. of Mot. to Dismiss at 1, ECF No. 14-1 (Apr. 27, 2026) ("Def's. Mem."). As the alleged failure to state a claim, she argues that the statute of limitations has lapsed, that Mr. Cadet fails to adequately identify any defamatory statement, that any alleged report of Mr. Cadet's sexual assault is subject to a qualified privilege, and that he fails to allege the elements of any legally sufficient claim.

The Court addresses each argument in turn.

### A. Personal Jurisdiction

"[A] court cannot render a judgment without first obtaining personal jurisdiction over the parties." *Argent Mortgage Co., LLC* v. *Huertas*, 288 Conn. 568, 576 (2008).

In a diversity action, or a federal-question action in which the governing federal statute does not provide for nationwide service of process, "a federal court applies the forum state's personal jurisdiction rules." *American Wholesalers Underwriting, Ltd. v. American Wholesale Insurance Group, Inc.*, 312 F. Supp. 2d 247, 251–52 (D. Conn. 2004) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)). The court therefore conducts a two-step inquiry. "First, the plaintiff has the burden of showing that the state's long-arm statute authorizes the exercise of personal jurisdiction." *Id.* at 252. "If the defendant is subject to jurisdiction under the terms of the applicable long-arm statute, then the court must also consider whether the exercise of jurisdiction satisfies due process." *Id.*; *see also Waldman v. Palestine Liberation Organization*, 835 F.3d 317, 327 (2d Cir. 2016).

Before discovery or an evidentiary hearing, "a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction and by making a prima facie case of jurisdiction." *American Wholesalers*, 312 F. Supp. 2d at 251. In evaluating that showing, "the

court construes any factual averments and resolves all doubts in the plaintiff's favor." *Id.* At the same time, "'[e]ach defendant's contacts with the forum State must be assessed individually.'" *Bucchere v. Brinker International, Inc.*, 49 Conn. Supp. 441, 445–46 (Super. Ct. 2005) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).

Connecticut General Statutes § 52-59b(a) provides that, "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) [t]ransacts any business within the state; (2) commits a tortious act within the state . . . ; [or] (3) commits a tortious act outside the state causing injury to person or property within the state" under the circumstances specified in the statute. Conn. Gen. Stat. § 52-59b(a). When a nonresident individual challenges personal jurisdiction, "the plaintiff bears the burden of presenting evidence sufficient to establish jurisdiction." *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 543 (2014). The court first must determine whether Connecticut's long-arm statute authorizes jurisdiction and, only if the statutory requirements are satisfied, whether exercising jurisdiction would violate due process. *Id.* at 543 ("The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (internal quotation marks omitted)).

To establish jurisdiction under Connecticut General Statutes § 52-59b(a), a plaintiff must allege facts showing that each nonresident defendant, "in person or through an agent," committed at least one of the acts enumerated in the statute and that the cause of action "aris[es] from" that defendant's conduct. Conn. Gen. Stat. § 52-59b(a). These "allegations must allege

jurisdictional facts sufficient to prove that the court had personal jurisdiction over a specific defendant." *Matthews*, 149 Conn. App. at 552.

Mr. Cadet alleges that he is a resident of Connecticut and alleges that Ms. Cadet is a resident of Massachusetts. Ms. Cadet argues that Mr. Cadet cannot maintain suit against her because none of the five possible subsections of the Connecticut long-arm statute, Connecticut General Statutes § 52-59b(a), impose personal jurisdiction on her as a non-resident individual.

Ms. Cadet, a Massachusetts resident, argues that Plaintiff, a Connecticut resident, *see* Compl. ¶¶ 3-4, "fails to allege facts which support this Court's jurisdiction under any subsection of Conn. Gen. Stat. § 52-59b(a)." Def's. Mem. at 6. Specifically, she argues that the claims are based in defamation, so subsections (a)(2) and (a)(3) do not confer jurisdiction. *Id*. (quoting *Jones v. Trump*, 919 F. Supp. 583, 586 (D. Conn. 1996)) (finding that subsections (a)(2) and (a)(3) explicitly exclude jurisdiction based on defamation). In her view, each of the six distinct counts are just "an extension of his defamation claims" and that the alleged defamatory statements which "put him in false light, caused him emotional distress, and constitute abuse of process because she complained to law enforcement," are "mere reframings of the alleged defamation." *Id*. at 6-7.

She further argues that subsections (a)(1), (a)(4), and (a)(5) do not confer jurisdiction. *Id*. at 8. According to Ms. Cadet, "[s]ubsection (a)(1) requires the defendant transact business in the state. Subsection (a)(4) requires the defendant own, use or possess property in the state. Subsection (a)(5) requires the defendant use a computer located in the state." *Id*. Ms. Cadet thus argues that Mr. Cadet has failed to allege facts to support jurisdiction under these subsections and contends that "even if Plaintiff had alleged those facts, the causes of action do not arise from transactions of business, ownership of property, or use of a computer." *Id*. (citing *Jones v.*

*Trump*, 919 F. Supp. at 586 ("Jurisdiction under these subsections is allowed only for 'a cause of action arising from any of the acts enumerated [there]in….') (internal citations omitted).

In response, Mr. Cadet argues that the parties are from different states and that the amount in controversy is over $75,000 so there is "clearly diversity of jurisdiction between the parties." Resp. to Mot. to Dismiss at 3. Further, Mr. Cadet argues that he suffered the brunt of the harm in Connecticut and that Ms. Cadet's actions would allow a Connecticut court to exercise personal jurisdiction over her. *Id*. at 3-4. Specifically, Mr. Cadet argues that the fact that Ms. Cadet's status as a Connecticut resident at the time of the conduct, her post-majority adoption of the alleged defamatory statements, and her continued litigation in Connecticut confirm purposeful availment, reinforce relatedness and foreseeability, and satisfy due process "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. at 3-5.

The Court agrees, in part.

Under Connecticut General Statutes § 52-59b(a), jurisdiction over a nonresident individual is authorized when the cause of action arises from conduct that the individual, "in person or through an agent," undertook within one of the enumerated categories, including ""[t]ransact[ing] any business within the state," "commit[ting] a tortious act within the state," "commit[ting] a tortious act outside the state causing injury to person or property within the state," "own[ing], us[ing], or possess[ing] any real property situated within the state," or "us[ing] a computer…or a computer network…located within the state" while satisfying the statute's additional requirements. Conn. Gen. Stat. § 52-59b(a)(1) – (5) (providing, under subdivision (3), that the nonresident also must regularly conduct or solicit business in Connecticut, engage in another persistent course of conduct in the state, derive substantial revenue from Connecticut

goods or services, or "expect[] or should reasonably expect the act to have consequences in the state and derive[] substantial revenue from interstate or international commerce").

More specifically, subsection (a)(1) of this statute "permits the exercise of jurisdiction over a nonresident defendant who 'transacts any business within the state.'" *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990); *see also* Conn. Gen. Stat. § 52-59b(a)(1). But Mr. Cadet does not allege that Ms. Cadet is transacting any business in Connecticut. Thus, this subsection does not apply to any of Mr. Cadet's claims.

Subsection (a)(2) "extends jurisdiction over an individual who commits 'a tortious act within the state.'" *Conn. Artcraft Corp. v. Smith*, 574 Supp. 626, 629 (D. Conn. 1983). And subsection (a)(3) "confers jurisdiction over an individual who 1) commits a tortious act outside of Connecticut; 2) which causes injury inside the state; 3) who expects or should expect that the act will have consequences in Connecticut; and 4) who derives substantial revenue from interstate or international commerce." *Id*. But "[s]ubsections (a)(2) and (a)(3) explicitly exclude jurisdiction based on defamation." *Jones*, 919 F. Supp. at 586. Thus, these subsections do not give this Court jurisdiction over Mr. Cadet's slander and libel clams against Ms. Cadet, and would only confer jurisdiction over the remaining tort claims of false light, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process, all allegedly arising out of Connecticut. *See* Compl. ¶¶ 5-11 (alleging that Ms. Cadet verbally and in writing falsely accused Mr. Cadet of sexual assault to various police departments and other state agencies, which led the State of Connecticut to prosecute him, that she "continues with the same accusations and told the State of Connecticut that she intend[s] to appear at trial and be a witness and victim," and "[a]s a result of the aforementioned false statements, the Plaintiff, Cadet's personal and professional reputation have been harmed, harmed in the community and in the

world and the Plaintiff's incurred money damages, anguish and emotional distress and extreme emotional distress.").

Subsection (a)(4) provides that "a court may exercise personal jurisdiction over any nonresident individual…who in person or through an agent: (4) owns, uses or possesses any real property situated within the state." Conn. Gen. Stat. § 52-59b(a)(4). But Mr. Cadet does not allege that Ms. Cadet owns, uses, or possesses any real property in Connecticut, and even if he had, the allegation that Ms. Cadet "lived in Connecticut when the alleged statements were made," is insufficient to establish personal jurisdiction. *See Thomas v. Lavallee*, No. HHDCV186101163S, 2019 WL 2005749, *3 (Conn. Super. Ct. Apr. 5, 2019) (internal citations omitted) (recognizing that "the property prong of the long-arm statute is invoked for causes of action directly related to the property" and that "defendant's ownership of real property in Connecticut, without more, does not provide a basis for personal jurisdiction."). Subsection (a)(4) thus does not establish personal jurisdiction for any of Mr. Cadet's claims.

Finally, subsection (a)(5) provides that "a court may exercise personal jurisdiction over any nonresident individual…who in person or through an agent: (5) uses a computer…located within the state." Conn. Gen. Stat. § 52-59b(a)(5). Mr. Cadet alleged that Ms. Cadet "made the same statements in writing to third parties, including and not limited to the Trumbull Police Department, her mother, a priest, online via various websites like Instagram and [F]acebook." Compl. ¶ 27. The long-arm statute "requires only that the computer or network, not the user, be located in Connecticut." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 729 (2d Cir. 2012). But Mr. Cadet fails to allege that Ms. Cadet used a computer or a network located in Connecticut. Thus, subsection (a)(5) does not establish personal jurisdiction for any of Mr. Cadet's claims.

Even after identifying statutory authority for personal jurisdiction for Mr. Cadet's non-defamation claims, "a plaintiff must also demonstrate that the exercise of personal jurisdiction over the defendant would comport with due process." *JCorps Int'l, Inc. v. Charles & Lynn Schusteran Family Found.*, 828 Fed. Appx. 740, 743 (2d Cir. 2020) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010)). If a party is not present in the forum of the court, courts must assess whether the party has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A critical part of this analysis is determining if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). When analyzing whether a potential defendant should reasonably anticipate out-of-state litigation, courts must consider "the quality and nature of the defendant's activity" and must determine whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Here, Ms. Cadet allegedly made the statements to a police department in Connecticut, the alleged assault happened in Connecticut, the alleged assault was done by a Connecticut resident, and Ms. Cadet allegedly "told the State of Connecticut that she intend[s] to appear at trial and be a witness." Compl. ¶ 6. These actions make it reasonably foreseeable that Ms. Cadet could be "haled into court" here and create a "substantial connection" with this forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("Jurisdiction is proper, however, where the contacts proximately results from actions by the defendant himself that create a 'substantial

connection' with the forum State."); *see also Travelers Health Assn. v. Virginia*, 339 U.S. 643, 448 (1950) (finding personal jurisdiction where the defendant has created "continuing obligations" between themselves and the residents of the forum). Thus, there is personal jurisdiction over the remaining tort claims of false light, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process.

Accordingly, while the tort claims of false light, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process shall remain in the case, the slander and libel claims will be dismissed from this case, due to the lack of personal jurisdiction over Ms. Cadet. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (recognizing that, in the absence of personal jurisdiction over a defendant, "the court is powerless to proceed to an adjudication,") (internal quotation marks and citation omitted).

**B. The Failure to State a Claim**

Ms. Cadet also argues that Mr. Cadet has failed to state a claim upon which this court can grant relief under Federal Rule of Civil Procedure 12(b)(6). First, Ms. Cadet argues that the claim for negligent infliction of emotional distress is outside of the applicable statute of limitations.[1] Second, Ms. Cadet argues that her alleged statements at the heart of the litigation are subject to a qualified privilege. And third, Ms. Cadet argues that Mr. Cadet failed to plead the requisite elements for the Court to sustain the remaining counts.

The Court will address each of the remaining claims in turn.

---

[1] Ms. Cadet also argues that the claims for defamation, slander and libel, are outside of the applicable statute of limitations, and that Mr. Cadet failed to allege either claim properly. For the reasons discussed below, as to timeliness with respect to the negligent infliction of emotional distress claim and as to the qualified privilege with respect to the intentional infliction of emotional distress claim, these claims would have to be dismissed even if this Court had personal jurisdiction over them.

1. *The Negligent Infliction of Emotional Distress Claim*

Connecticut state law imposes a two-year statute of limitations for negligent infliction of emotional distress claims. *See Thompson v. Rovella*, 2017 U.S. Dist. LEXIS 20457 (D. Conn. Feb. 14, 2017) at *14 (noting that "Connecticut law imposes . . . a two year statute of limitations for negligent infliction of emotional distress.") (citing Conn. Gen. Stat. § 52-584). Under § 52-584, "an injury occurs when a party suffers some form of actionable harm" and that "[a]ctionable harm occurs when the plaintiff discovers…that he or she has been injured and that the defendant's conduct caused such injury." *Mollica v. Toohey*, 134 Conn. App. 607, 613 39 A.3d 1202 (2012).

Ms. Cadet argues that the applicable two-year statute of limitations for negligent infliction of emotional distress bars Mr. Cadet's claim, because Mr. Cadet's claims arise out of statements from March 18, 2023, May 1, 2023, and July 5, 2023.

The Court agrees.

While the lapse of the statute of limitations period is an affirmative defense that Ms. Cadet must plead and prove, Fed. R. Civ. P. 8(c)(1), "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 426 (2d Cir. 2008) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)).

Here, Mr. Cadet alleges that "on or about March 18, 2023" Ms. Cadet made allegedly defamatory statements when she accused him of sexual assault. Compl. ¶ 7. Mr. Cadet also alleges that "[o]n or about July 5, 2023, the plaintiff, Cadet, was accused by the State of Connecticut of crimes because of report made by the defendant while she was a minor." *Id.* ¶ 5. Mr. Cadet filed his Complaint, however, on March 2, 2026, 2 years, 11 months, and 12 days

from when the allegedly defamatory statements were made. And 2 years, 7 months, and 25 days from when the accusations by the State were made.

As a result, even the last of the statements allegedly underlying Mr. Cadet's negligent infliction of emotional distress claim, statements allegedly made on July 5, 2023, occurred more than two years after he brought this lawsuit, on March 2, 2026. *Mollica*, 134 Conn. App. at 613 (finding that plaintiff's knowledge of the harm is essential for the statute of limitations analysis).

Accordingly, the claim for negligent infliction of emotional distress is time-barred, and will be dismissed.[2]

2. *The Intentional Infliction of Emotional Distress Claim*

"[A] complaining witness who initiates a prosecution and procures the issuance of an arrest warrant has only a qualified immunity." *Gallo v. Barile*, 284 Conn. 459, 467 (2007) (quoting *Petyan v. Ellis*, 200 Conn. 243, 252 (1986)). But, to defeat a qualified privilege, the plaintiff must establish "that the holder of the privilege acted with malice in publishing the defamatory material." *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 630 (2009). And "a qualified privilege is lost upon a showing of *either* actual malice, i.e., publication of a false statement with actual knowledge of its falsity or reckless disregard for its truth, *or* malice in fact, i.e., publication of a false statement with bad faith or improper motive." *Id*. (emphasis in original).

Ms. Cadet argues that Mr. Cadet's intentional infliction of emotional distress claim against her must be dismissed because she is entitled to a qualified privilege for reporting sexual assault to the police.

The Court agrees.

---

[2] Even if timely, for the same reasons discussed below, this claim too would be dismissed given the qualified privilege for statements made in the context of underlying criminal proceedings.

Here, Mr. Cadet has failed to make any allegations that support a finding of malice. While Mr. Cadet has alleged that the "statements and accusations [made by Ms. Cadet] were false," these conclusory allegations lack the "factual amplification . . . to render[his] claim plausible," *Arista Records LLC*, 604 F.3d at 120 (citation omitted), in the absence of factual allegations sufficient to show that the statements were made with "improper" or "unjustifiable motives." *See Hopkins v. O'Connor*, 282 Conn. 821, 846-7 (2007) ("Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false…A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth…Malice in fact is sufficiently shown by proof that the [statement was] made with improper and unjustifiable motives.") (internal quotation marks and citations omitted).

Accordingly, in the absence of any allegations sufficient to suggest malice, and given the application otherwise of qualified privilege, the claim for intentional infliction of emotional distress will be dismissed. *See Gallo*, 284 Conn. at 466 ("The absolute privilege for statements made in the course of a judicial proceeding applies equally to defamation claims . . . and claims for intentional infliction of emotional distress.") (citing *DeLaurentis v. City of New Haven*, 220 Conn. 225, 265 (1991).

3. *The False Light Claim*

"The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; and (2) is such a major misrepresentation of his character, history, activities, or beliefs that serious offense may be expected be taken by a reasonable man in his position." *Moreland v. Beso Lounge & Rest. LLC*, 2020 U.S. Dist. LEXIS 162009 at *13 (D. Conn. Sep. 4, 2020) (quoting *Jonap v. Silver*, 1 Conn. App. 550, 557-58 474 A.2d 800 (1984)).

To establish the prima facie case of false light, the plaintiff must show "(a) the false light in which [they] were placed would be highly offensive to a reasonable person, and (b) the [defendant] had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." Restatement (Second) of Torts § 652E (1977); *see also, Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 448 A.2d 1317 (1982).

One of the essential elements of a false light claim is that the defendant publicly disseminates the information. *Pace v. Bristol Hosp.*, 964 F. Supp. 628, 630-31 (D. Conn. 1997) (citing *Handler v. Arends*, 1995 WL 107328, at *11 (Conn. Super. Ct. March 1, 1995)). The Second Restatement of Torts explains that a "matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Pace*, 964 F. Supp. at 631, citing 3 Restatement (Second) Torts § 652D, cmt. a (1977).

Ms. Cadet argues that Mr. Cadet has failed to plead the requisite elements of his claims for false light.

The Court agrees.

The sharing of information in the context of a police investigation is not sufficient to support a finding of "publicity". *See Kennedy v. Caruso*, No. 3:19-CV-260 (VLB), 2021 WL 5415262, at *21 (D. Conn. Nov. 19, 2021), *aff'd sub nom.*, *Kennedy v. Hirsch*, No. 21-3155, 2023 WL 2564026 (2d Cir. Mar. 20, 2023) (existence of police report without defendant's dissemination is insufficient to sustain false light claim). As to whom Ms. Cadet allegedly made the defamatory statements, Mr. Cadet alleges to "third parties, including and not limited to the Trumbull Police Department, her mother, a priest, online via various websites like Instagram and

facebook." Compl. ¶ 27. But statements to the police, her mother, and a priest do not meet the essential element of "publicity," because the statements are made to individuals. *See Kennedy*, 2021 WL 5415262 at *61 ("The publicity associated with invasions of privacy means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.") (internal quotation marks and citation omitted).

As to the utilization of social media, "[t]o establish the essential element of 'publicity,' the plaintiff must produce "proof not merely of limited, private communication to one or more other persons, but of widespread communication to the general public or a significant segment thereof.'" *Pace*, 964 F. Supp. at 631(citing *Handler*, 1995 WL 107328 at *11). Beyond vague statements about social media, with no description of what context the social media was used and what statements were made, Mr. Cadet fails to allege that Ms. Cadet disseminated the information to the public at large.

Accordingly, absent the necessary allegations, the claim for false light will be dismissed.

4. *The Abuse of Process Claim*

The elements of an abuse of process claim are "(1) the use of a legal process after a proceeding has begun (2) primarily for an improper purpose." *Dipane-Saleem v. Gallagher*, 2016 U.S. Dist. LEXIS 32996 at *16 (D. Conn. Mar. 15, 2016) (citing *Larobina v. McDonald*, 274 Conn. 394, 403, 406, 876 A.2d 522 (2005). This claim requires conduct (1) occurring after the issuance of process and (2) intended primarily to accomplish a purpose for which the process is not designed. *See Doctor's Associates, Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996). "[U]nder Connecticut law, a party does not abuse the legal process merely by filing suit. This is true regardless of the plaintiff's motive." *Id.*

Mr. Cadet alleged that Ms. Cadet "used the legal process to inflict emotional distress upon the defendant" and that "[t]he defendant used the legal system for a purpose for which it was not intended as the system was not created to inflict emotional distress on people." Compl. ¶¶ 33-35.

The Court disagrees.

The tort of abuse of process has "evolved as a 'catch-all category to cover improper uses of the judicial machinery." *Larobina*, 274 Conn. at 406. But, "to prevail on an abuse of process claim, the plaintiff must establish that the defendant used a *judicial process* for an *improper purpose*." *Id.* at 406-07 (emphasis in original). Other than to conclusory assert that Ms. Cadet made allegedly false statements to the police with the intention of inflicting emotional distress on him, the Complaint lacks the "factual amplification . . . to render[his] claim plausible," *Arista Records LLC*, 604 F.3d at 120 (citation omitted). Ms. Cadet merely reported the alleged sexual misconduct and also allegedly agreed to assist with the investigation, if necessary, but she is not involved in the prosecution of Mr. Cadet, and there are no allegations suggesting that she has any involvement in any judicial processes.

Moreover, there are no allegations whatsoever "point[ing] to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation." *Mozzochi v. Beck*, 204 Conn. 490, 497 (1987).

Accordingly, in the absence of such allegations, beyond the conclusory ones in this Complaint, the abuse of process claim will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED**.

To the extent the deficiencies identified in this Ruling and Order can be remedied, any proposed Amended Complaint shall be filed by **December 18, 2026**.

**SO ORDERED** at New Haven, Connecticut, this 25th day of November, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE